EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Residentes Urbanización Rincón Español<br><br>Peticionaria<br><br>v.<br><br>Humberto José Lora Mercedes; Felícita Ayala Diaz y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | Certiorari<br><br>2021 TSPR 14<br><br>206 DPR ____ |

Número del Caso: CC-2019-811

Fecha: 12 de febrero de 2021

Tribunal de Apelaciones:

    Panel IV

Abogado de la parte peticionaria:

    Lcdo. Michael Corona Muñoz

Abogados de la parte recurrida:

    Lcdo. Xavier Osvaldo Nieves Cabrera
    Lcdo. Christian M. Rodríguez Torres

Materia: Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como la Ley de Control de Tráfico de Vehículos de Motor y Uso Público de Ciertas Calles (Ley de Control de Acceso) 23 LPRA sec. 64 et seq.: Un propietario -por si solo o en representación de una vivienda- que de una autorización para controlar el acceso o los accesos de su urbanización, calle o comunidad, en las circunstancias que dispone la Sec. 3 de la Ley de Control de Acceso, supra, queda automáticamente obligado al pago de cuota para el mantenimiento del sistema de control de acceso. No hay requisitos de forma adicionales a los dispuestos por la Sec. 3 de este estatuto.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Residentes Urbanización Rincón Español<br><br>Peticionaria<br><br>v.<br><br>Humberto José Lora Mercedes; Felícita Ayala Diaz y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | CC—2019-0811 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 12 de febrero de 2021.

Nos toca determinar si la autorización escrita que dio el Sr. Humberto Lora Mercedes -en representación de la sociedad legal de bienes gananciales- para el establecimiento del régimen de acceso controlado, cumplió con la Sec. 3 de la Ley Núm. 21 de 20 de mayo de 1987, infra, conocida como Ley de Control de Acceso, y por consiguiente quedó obligado por las responsabilidades que esta impone. Resolvemos que sí. La Ley de Control de Acceso no impone requisitos de forma adicionales a esa autorización escrita.

I.

En marzo de 2009, la Junta de Residentes de la Urb. Rincón Español presentó una demanda de cobro de dinero

contra el Sr. Humberto Lora Mercedes, su esposa, la Sra. Felícita Ayala Diaz y la sociedad legal de bienes gananciales compuesta por ambos (en adelante, "el matrimonio Lora-Ayala). La Junta alegó que el matrimonio Lora-Ayala eran los dueños de una propiedad ubicada en la Calle 3, B-27-A, de la Urbanización Rincón Español. La urbanización estaba sujeta a un sistema de control de acceso. La Junta reclamó que la cuota de mantenimiento asignada era por $45 mensuales y que, a pesar de varios requerimientos, el matrimonio Lora-Ayala no había cumplido con su pago.

Tras varios trámites procesales, incluida la consolidación del pleito con otros de igual naturaleza que presentó la Junta, el Tribunal de Primera Instancia notificó una sentencia en la que declaró con lugar la demanda. El señor Lora Mercedes recurrió de ese dictamen ante el Tribunal de Apelaciones, pero ese foro concluyó que dicha determinación no era final, pues la sentencia no incluyó a la señora Ayala Díaz, a la sociedad legal de bienes gananciales ni el lenguaje sobre sentencia parcial que requiere la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V., R. 42.3. Así, el foro apelativo intermedio acogió el recurso presentado por el señor Lora Mercedes como un _certiorari_ y lo denegó. Ante ello, el señor Lora Mercedes recurrió en _certiorari_ ante este Tribunal, y denegamos expedir el auto.

Luego, el 17 de mayo de 2019, el foro primario notificó una "Sentencia Nunc Pro Tunc". De esta forma, enmendó la sentencia original a los únicos fines de incluir como demandados a la Sra. Felícita Ayala Díaz y a la sociedad legal de bienes gananciales compuesta con el codemandado Sr. Humberto Lara Mercedes.

En desacuerdo, el matrimonio Lora-Ayala apeló ante el foro apelativo intermedio. Planteó que el foro primario erró al determinar que el señor Lora Mercedes autorizó el sistema de control de acceso y al celebrar una vista en su fondo, a pesar de que la Junta presentó una moción de desistimiento voluntario.

El 4 de septiembre de 2019, el foro apelativo intermedio revocó el dictamen del foro primario. De esta forma, concluyó que el listado firmado por los residentes de la Urbanización Rincón Español, entre estos el señor Lora Mercedes, no cumplía con las exigencias legales de la Ley Núm. 21 y su jurisprudencia interpretativa para ser catalogada como un contrato que obligara al matrimonio Lora-Ayala a pagar las cuotas de mantenimiento reclamadas.

Insatisfecha con lo resuelto por el Tribunal de Apelaciones, la Junta acude ante nos mediante recurso de certiorari. En este, bajo fundamentos similares a los esbozados ante el foro primario y el foro apelativo intermedio, solicita que revoquemos el dictamen recurrido.

Expedido el auto de <u>certiorari</u> y con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como la Ley de Control de Tráfico de Vehículos de Motor y Uso Público de Ciertas Calles (Ley de Control de Acceso), 23 LPRA sec. 64 et seq., fue aprobada con el fin de proveerle a la ciudadanía un instrumento adicional para combatir la criminalidad y procurar su cooperación activa en la lucha contra el crimen. Véase, <u>Dorado del Mar v. Weber et als.</u>, 203 DPR 31, 48 (2019); <u>Alonso Piñero v. UNDARE, Inc.</u>, 199 DPR 32, 39-40 (2017); <u>Caquías v. Asoc. Res. Mansiones Rio Piedras</u>, 134 DPR 181, 186 (1993). De esta forma, se "creó un mecanismo voluntario en el cual las urbanizaciones y las comunidades —luego de obtener la autorización correspondiente— pudieran controlar el acceso vehicular y el uso público de sus calles residenciales". <u>Alonso Piñero v. UNDARE, Inc.</u>, <u>supra</u>, pág. 40.

En esa dirección, la ley estableció los requisitos necesarios para poder someter la urbanización a un régimen de control de acceso. En lo pertinente al caso ante nuestra consideración, la Sec. 3 de la Ley Núm. 21 dispone los siguientes requisitos:

§ 64a. Requisitos

A los fines de poder solicitar y obtener el permiso a que se refiere la sec. 64 de este título, se deberá cumplir con los siguientes requisitos:

. . . . . . . .

(c) Que la solicitud de autorización para controlar el acceso o los accesos a la urbanización, calle o comunidad sea adoptada por lo menos por tres cuartas 3/4 partes de los propietarios de las viviendas allí establecidas. **La participación de dichos propietarios estará limitada a un propietario por vivienda** y deberá constar por escrito bajo la firma de cada uno de ellos. **Una autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad prestada voluntariamente por un propietario mayor de edad y en representación de una vivienda obligará al propietario a cumplir con lo dispuesto en la sec. 64d-3 de este título y estará en pleno efecto y vigor mientras no se emita un documento escrito que claramente revoque la autorización prestada con fecha anterior.** Una revocación de autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad será válida únicamente si se presenta en cualquier momento hasta la fecha de celebración de la primera vista pública. Luego de esta fecha aplicará lo dispuesto en la sec. 64d-3 de este título. Aquellas personas que favorezcan la implantación del sistema deberán hacerlo expresamente y por escrito en el momento en que se lleve a cabo la gestión para obtener de los propietarios las autorizaciones necesarias para solicitar el permiso de control de acceso... Sec. 3(c) 23 LPRA sec. 64a(c) (Énfasis suplido).

Dada la autorización escrita por cualquiera de los propietarios del inmueble, estos quedan obligados al pago de "una cuota para cubrir los costos y gastos de instalación, operación y mantenimiento del sistema de control de acceso, incluyendo los salarios o jornales del personal contratado". Sec. 10 (a) 23 LPRA sec. 64d-3(a). Véase, Dorado del Mar v. Weber et als., supra, pág. 49.

Recientemente en Alonso Piñero v. UNDARE, Inc., supra, pág. 35, nos expresamos sobre el requisito para sujetar al propietario de un inmueble al pago de las cuotas de mantenimiento de un sistema de control de

acceso. Allí aclaramos que el propietario que inicialmente no autorice por escrito el establecimiento del régimen de acceso controlado y desee posteriormente comprometerse al pago de las cuotas, debe hacerlo mediante contrato escrito. Íd. Lo anterior es innecesario cuando el propietario autoriza desde el principio el establecimiento del régimen de acceso controlado. Íd. pág. 43.

La controversia en Alonso Piñero v. UNDARE, Inc., supra, no nos requirió establecer si la Ley de Control de Acceso, supra, exige requisitos de forma más allá de que la autorización sea por escrito. Sin embargo, el caso de autos nos da esa oportunidad. La controversia gira en torno a si el contenido del documento de autorización resulta suficiente para sujetar al propietario a las obligaciones de la Ley de Control de Acceso, supra. Resolvemos que sí.

Al evaluar el caso ante nuestra consideración, surge con claridad que el señor Lora Mercedes -en representación de la sociedad legal de bienes gananciales- firmó la autorización para establecer el control de acceso y, por consiguiente, comprometió a la sociedad ganancial al pago de la cuota de mantenimiento, según dispone la Ley de Control de Acceso, supra. La autorización en controversia consta en una lista titulada "Residentes de Urb. Rincón Español", la cual consiste de una tabla que al inicio establece: "Estoy de acuerdo con

el control de acceso". La referida tabla contiene seis (6) columnas, a saber: nombre, dirección, teléfono, marcar sí o no, y firma.

No estamos ante una autorización para auscultar la posibilidad de establecer un régimen de acceso controlado o de limitar la entrada y salida de personas extrañas a la comunidad, tal como ocurrió en Caquías v. Asoc. Res. Mansiones Río Piedras, infra. En esa ocasión esta curia determinó que el haber firmado una autorización para que la asociación de residentes efectuara gestiones para limitar la entrada y salida de personas extrañas a la comunidad no constituía una autorización expresa al establecimiento de un control de acceso y que, por tanto, tal acción no tuvo el efecto de comprometer a los residentes al pago de las cuotas de mantenimiento. Caquías v. Asoc. Res. Mansiones Río Piedras, 134 DPR 181, 213 (1993).

Tampoco surge del expediente que los residentes se hubieran opuesto inicialmente a la implantación del control de acceso ni mucho menos que, luego de haber provisto autorización, la hayan retirado oportunamente, según provee la Sec. 3(c) de la Ley de Control de Acceso, 23 LPRA sec. 64a(c). Por el contrario, en este caso la Junta fue clara al preguntarle a los residentes si estaban de acuerdo con el establecimiento del sistema de control de acceso. A ello, el señor Lora Mercedes, en representación de la sociedad legal de bienes

gananciales, respondió con una marca en el encasillado correspondiente al "sí" y su firma. A diferencia del señor Lora Mercedes, varios vecinos marcaron que "no" y nunca se les ha exigido el pago de la cuota de mantenimiento. Sol. Cert., pág. 3. Valga señalar que, según surge de la sentencia del foro primario, el matrimonio Lora-Ayala no presentó prueba para impugnar la autorización ni la deuda, sino que se limitó a testificar que no estaba de acuerdo con la imposición de las cuotas de mantenimiento, porque entendía que la autorización brindada no obligaba automáticamente al pago de las cuotas de mantenimiento.

Esa posición es errónea. La Ley de Control de Acceso, <u>supra</u>, establece que "[u]na autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad, **prestada voluntariamente por un propietario mayor de edad y en representación de una vivienda, obligará al propietario a cumplir con lo dispuesto en la sec. 64d-3 de este título.**" 23 LPRA sec. 64(a). En otras palabras, una vez dada la autorización, el propietario -en representación de una vivienda- queda obligado automáticamente. No se tiene que dar una segunda autorización respecto al pago de cuotas de mantenimiento. El legislador no quiso bifurcar la autorización y estableció con claridad que una vez el propietario la da, este queda obligado a pagar la cuota de mantenimiento.

Más aun, no surge de la Ley de Control de Acceso, supra, ni de su historial legislativo, requerimiento alguno sobre el contenido de la autorización para el establecimiento del régimen de control de acceso. El legislador fue claro al requerir en la Sec. 3 de la Ley de Control de Acceso, supra, que la autorización se hiciera mediante documento escrito, pero en ningún momento dispuso requisitos de forma adicionales respecto al contenido de la autorización. Por lo tanto, al exigirlos, el foro apelativo intermedio erró.

III.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la del Tribunal de Primera Instancia, Sala de Carolina.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Junta de Residentes Urbanización Rincón Español<br><br>Peticionaria<br><br>v.<br><br>Humberto José Lora Mercedes; Felícita Ayala Diaz y la Sociedad Legal de Gananciales compuesta por ambos<br><br>Recurridos | CC—2019-0811 | |

SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2021.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la del Tribunal de Primera Instancia, Sala de Carolina.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo está inhibido.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo